# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ROBLES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant. | 1:08-cv-1297-JLT<br><br>DECISION AND ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br>(Doc. 2)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR DEFENDANT MICHAEL J. ASTRUE AND AGAINST PLAINTIFF MICHAEL ROBLES |

In this action, Plaintiff challenges the final decision of the Commissioner of Social Security (Commissioner) denying his February 18, 2000 application for Disability Insurance benefits (DIB). In that application, he claimed to have been disabled since January 10, 1992, due to back pain resulting from injury to a herniated disc. (A.R. 26, 98-102.)[1]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and pursuant to the order of Judge Oliver W. Wanger of October 6, 2008, the matter has been assigned to the Magistrate Judge to conduct all further proceedings in this case, including entry of final judgment. It was assigned to the undersigned Magistrate Judge on December 29, 2009.

---

[1] Plaintiff later reported limitations from additional conditions, including hypertension, arthritis, muscle spasms, depression, anger, vision problems, and shortness of breath. (A.R. 111.)

1

The decision under review is that of Social Security Administration (SSA) Administrative Law Judge (ALJ) James E. Ross, dated June 22, 2006 (A.R. 25-31). The ALJ's decision was rendered after a hearing held on December 14, 2005, at which Plaintiff and his wife testified. (A.R. 367-88).

Previously another ALJ had issued a decision on Plaintiff's application. It was dated July 24, 2002, and was rendered after a hearing held on June 27, 2002. (A.R. 345-66.) It was vacated by the Appeals Council with instructions for additional evaluation of Plaintiff's subjective complaints and mental impairment as well as development of evidence from a vocational expert ("VE") to clarify the effect of assessed limitations on the occupational base and to resolve any conflict between the VE's occupational evidence and the information in the <u>Dictionary of Occupational Titles</u> and the United States Department of Labor's <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> at 342 (1993). (A.R. 25.)

After the last hearing held by ALJ Ross in December 2005, interrogatories were sent to vocational expert Kenneth Ferra, and his responses were proffered to Plaintiff's counsel. (A.R. 292-323.) The Appeals Council denied Plaintiff's request for review of ALJ Ross's decision on January 14, 2008 (A.R. 16-20), and Plaintiff filed his complaint in this Court on September 2, 2008. Briefing commenced on April 20, 2009, and was completed with the filing of Defendant's cross-motion for summary judgment and opposition to Plaintiff's opening brief on June 22, 2009. The matter has been submitted without oral argument to the Magistrate Judge.

I. <u>Jurisdiction</u>

Plaintiff filed his complaint on September 2, 2008, more than sixty days after the mailing of the notice of decision on or about January 14, 2008. However, upon Plaintiff's request, the Appeals Council extended the time within which Plaintiff could file a civil action to thirty days from the date of receipt of the notice of extension dated July 30, 2008. (A.R. 15, 7.) Receipt of the notice of extension of time is deemed to be five days after the date of the notice. 20 C.F.R. § 404.901. Accordingly, Plaintiff's filing of the action in this Court on September 2, 2008, was timely because it was within thirty days of August 5, 2008. 42 U.S.C. § 405(g)

II. <u>Standard and Scope of Review</u>

A. <u>General Legal Standards</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. <u>See</u>, <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

B. <u>Presumption of Continuing Non-Disability</u>

In the decision being reviewed, the ALJ applied a presumption of continuing non-disability based on a previous ALJ's post-hearing decision, dated May 28, 1998, on a previous application for benefits. Plaintiff did not seek review of that decision, which included a finding

3

that Plaintiff could perform a broad range of light work. (A.R. 25.) The legal effect to be given such a decision is set forth in Chavez v. Bowen, 844 F.2d 691, 693-94 (9th Cir. 1988), in which it is recognized that where a claimant has been found not disabled in a prior decision of an ALJ after a hearing, there is a continuing presumption of non-disability that a claimant must overcome by proving changed circumstances indicating a greater disability. Plaintiff does not challenge the application of Chavez v. Bowen or of the presumption to the application being reviewed in this proceeding.

### C. Pertinent Period of Review

Plaintiff's last insured date was December 31, 2000. Thus, Plaintiff was not entitled to a period of disability and DIB unless evidence established that Plaintiff was under a disability on or before December 31, 2000. (A.R. 25-26.) Hence, the relevant period for consideration regarding disability is from May 29, 1998, through December 31, 2000. (A.R. 25-26.)

### III. Administrative Findings

The ALJ found that Plaintiff had not presented any new or material evidence warranting a change in his residual functional capacity (RFC). (A.R. 25.) During the pertinent interval from May 29, 1998, through December 31, 2000, Plaintiff had a severe impairment of moderate, degenerative disc disease of the lumbar spine and his depressive disorder and chronic obstructive pulmonary disease were only slight impairments. No impairment or combination thereof met or medically equaled a listed impairment. Plaintiff retained the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, and to stand and walk six hours in an eight-hour work day with occasional stooping, crouching, kneeling, crawling, climbing stairs and ramps, and fingering; Plaintiff could not climb ropes, ladders, or scaffolds and had to avoid concentrated exposure to pulmonary irritants. (A.R. 28-29.) Plaintiff could not perform his past relevant work as a food sales clerk and winery worker (semi-skilled light work with the clerk's position requiring frequent fingering). (A.R. 30.) Considering that Plaintiff was a younger individual (forty-seven years old on the date last insured), with at least a high school education and the ability to communicate in English, and further considering Plaintiff's work experience and RFC, there were jobs existing in significant numbers that Plaintiff could have performed, including agricultural produce sorter and

housekeeping cleaner. (A.R. 30.) Hence, Plaintiff was not disabled at the pertinent time. (A.R. 31.)

IV. Plaintiff's Contention

The ALJ concluded that Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration, and limiting effects of these symptoms were not entirely credible. (A.R. 29.) The sole contention raised in Plaintiff's brief is that in making his credibility findings, the ALJ failed to set forth clear and convincing reasons for his conclusions concerning Plaintiff's back pain.

V. Administrative Record

A. Testimony[2]

At the hearing held on December 14, 2005, Plaintiff confirmed that he had originally weighed up to 261 pounds. He believed that before December 31, 2000, he had suffered back problems affecting his ability to walk, but he was not sure how far he could walk. He testified that he used to do the lawn and do some housecleaning out of guilt at not bringing in money since he had stopped working. (A.R. 382.) The doctor had told him that his difficulty in walking was caused by muscle cramps, but Plaintiff guessed that the difficulty was a precursor to his present condition. (A.R. 382.) Plaintiff testified that he had not had any surgery but that he had an injection in his back "probably" sometime before 2000. (A.R. 383.)

Plaintiff's wife testified that he had back problems and pain since 1991. At that time she reported that he twisted his back to avoid a fall at work, which led to his stopping work in 1991 because of back pain. (A.R. 373-74.) She reported that Plaintiff had abused heroin for eight to ten years and had been unsuccessful with methadone treatment. However, after being jailed in 1995, she testified that Plaintiff had maintained his sobriety upon release for about ten years. (A.R. 376, 379.)

---

[2] The ALJ referred to additional subjective complaints of Plaintiff, such as his problems with his hands and mental problems. (A.R. 29.) However, Plaintiff does not challenge the reasoning concerning these matters; he raises only the ALJ's treatment of his complaint of back pain. Therefore, only the evidence pertinent to Plaintiff's back pain is summarized and discussed.

5

B. Medical Record

Records, including x-rays from the middle of 1996, showed that Plaintiff had mild-to-moderate degenerative joint disease that was treated with Motrin. (A.R. 183-84, 191.) In August 1996, neurosurgeon, Dr. Charles J. Wrobel, opined that Plaintiff was not a candidate for surgery but opined that he was totally disabled due to his pain. (A.R. 202-03.) However, as of October 16, 1996, Plaintiff was cleared to return to work, without restrictions. (A.R. 180.)

On February 21, 2000, treating physician Leila Olivera, who practiced internal medicine, noted that Plaintiff had reported that his back pain was not responding to Motrin and that he wanted to continue on disability. Dr. Olivera noted a decreased range of motion in his back but no tenderness. As a result, her plan was to try Plaintiff on Medrol and Flexeril. (A.R. 165.) Later, on April 4, 2000, Plaintiff reported to Dr. Olivera that Dr. Wrobel was giving Plaintiff disability letters. He reported that, although the Flexeril helped his pain, he requested Dr. Olivera provide him a letter supporting a claim of permanent disability. (A.R. 162.) Nevertheless, Dr. Olivera wrote,

> 1. Chronic pack pain. I doubt this could cause permanent disability. Looking at the x-ray in the past, it shows like a mild degenerative arthritis of the lumbosacral spine.

(A.R. 162.) Dr. Olivera's plan was to obtain an evaluation from neurologist, Dr. Stephen Helvie. (A.R. 162.) A note from Dr. Richard E. Helvie, reflects that on April 3, 2002, nerve conduction studies of Plaintiff's bilateral upper extremities showed severe bilateral CTS. (A.R. 255.)

Consulting, examining physician Dr. Emanuel Dozier performed a comprehensive internal medicine evaluation in April 2000. (A.R. 217-21.) Plaintiff reported that he had suffered back pain for ten years with occasional radiation to both lower extremities. Plaintiff reported that he could stand fifteen minutes until he experienced pain. He stated that he could walk two blocks, and sit thirty minutes before he needed to stand or walk. He reported that he could not stoop or bend. However, Dr. Dozier observed Plaintiff ambulating without pain. The exam revealed normal muscle bulk and tone, some trigger points over the sacroiliac joints bilaterally with mild paravertebral muscle spasms in the lumbar area. Straight leg raising was positive on the right at forty-five degrees and negative on the left. (A.R. 219.) There was no significant atrophy, gait was

normal, and pinprick diminished in S2 distribution over right lower extremity. Dr. Dozier noted that Babinski was down-going bilaterally, motor strength was 5/5 in upper and lower extremities, and grip strength 5/5 bilaterally. (A.R. 219-220.) Dr. Dozier noted that the impression was mild osteoarthritis and chronic mechanical low back pain with mild radiculopathy. (A.R. 221.) Dr. Dozier opined that Plaintiff should be able to perform light work (occasionally lifting twenty pounds and frequently lifting ten pounds) without assistive devices, with no frequent bending, stooping, crawling, or crouching and with mild restriction in handling, restricted feeling and fingering, and restricted exposure to extremes of temperature. (A.R. 221.)

On June 7, 2000, a non-examining, state agency physician performed a RFC assessment of Plaintiff's degenerative disc disease in the lumbar spine, COPD, hypertension, and decreased vision. (A.R. 238-45.) The doctor determined that Plaintiff could perform light work (lift and carry twenty pounds occasionally and ten pounds frequently, with sitting and standing or walking for six hours in an eight-hour workday), but Plaintiff's back pain resulted in limitations in frequent balancing, only occasional climbing stairs or ramps, stooping, kneeling, crouching, crawling, fingering, and feeling. Also, the doctor determined that Plaintiff could never climb ladders, ropes, or scaffolds, and he had to avoid concentrated exposure to extremes of temperature and humidity, noise, and fumes. (A.R. 238-45.)

In August 2004 Dr. Sarupinder Bhangoo, who was board certified in internal medicine, conducted a "comprehensive internal medicine/hearings evaluation" which referred to records from 2003 through 2005, a period more distant from the pertinent period being considered. Dr. Bhangoo found Plaintiff had lumbar flexion of ninety degrees, extension of twenty-five degrees, and lateral flexion of twenty-five degrees with no deformity, tenderness, or muscle spasm. At the time, the straight leg raising test was negative bilaterally. He had motor strength of 5/5 in all extremities and the sensory exam revealed no decrease in pinprick or touch on either hand. He had normal reflexes and negative Babinski. The impression was lumbosacral degenerative disk disease by history and minor grade CTS. Dr. Bhangoo noted that Plaintiff had a good range of motion without any limitation of his physical activities. He noted an absence of localized tenderness, muscle spasms, or neurological deficits from the back pain. Plaintiff could lift and

carry 100 pounds occasionally and fifty pounds frequently, with no postural or manipulative limitations. (A.R. 315-26.)

Records from 2005 from doctors related to Delano Regional Medical Center reflect that Plaintiff was hospitalized in March 2005 for congestive heart failure. In September 2005, Dr. Vijaykumar Patel wrote in support of Plaintiff's request for benefits. Dr. Patel stated that due to Plaintiff's bacterial endocarditis, a large vegetation in his heart, congestive heart failure, hypertension, and severe edema, Plaintiff was "pretty much bed bound and debilitated, requiring others to help him with all aspects of daily living." (A.R. 328-338, 338.) Dr. Patel stated that Plaintiff was unable to perform work of any kind. (Id. at 338.)

VI. Credibility Findings

A. Legal Standards

The ALJ expressly found that Plaintiff's medically determinable impairments could have been reasonably expected to have produced the alleged symptoms; it was only the extent of the alleged subjective limitations that were subject to the negative finding.

Unless there is affirmative evidence that the applicant is malingering, where objective medical evidence establishes that the claimant suffers from an impairment that could reasonably produce the symptoms of which the applicant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration,, 533 F.3d 1155, 1160 (9th Cir. 2008). In Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007), the court summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" Morgan, 169 F.3d at 599 (quoting Lester, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." Id. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." Id.
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg.

8

57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair, 885 F.2d at 603; see also Thomas, 278 F.3d at 958-59.

Additional factors to be considered in weighing credibility include the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

1     Further, the pertinent Social Security Ruling requires the ALJ to articulate the reasons

2 supporting the ALJ's analysis:

>...When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
>The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7 at 4.

B. Analysis

The specific credibility findings under review will be considered in the context of the entire decision. The ALJ first reviewed the medical record, expressly noting the objective indicia of moderate degenerative disc disease in the x-rays of the lumbar spine taken in April 2000. (A.R. 28.) The ALJ noted:

> The related clinical note indicated that the claimant wanted the "disability letter for the SSI," but the doctor doubted that the claimant's condition could cause permanent disability (Exhibit B-1F, p. 7 [A.R. 156-194]). There is no evidence that the claimant sought or received any significant subsequent treatment.

(A.R. 28.) It is established that a physician's opinion regarding a claimant's ability to work is appropriately considered. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995). Inconsistencies between a plaintiff's claims and the observations of medical staff can constitute clear and convincing reasons for discounting claims of incapacity. Morgan v. Commissioner, 169 F.3d 595, 599-600 (9th Cir. 1999).

Here, the ALJ relied on the opinion of a treating physician at a pertinent time to the effect that it was quite doubtful that Plaintiff's moderate disc condition could cause a permanent

disability. Considering the date of the observation and the treating relationship between Dr. Olivera and Plaintiff, the ALJ's reasoning in this regard was clear and convincing.

An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). Particularly probative is an unexplained or inadequately explained failure to seek treatment or follow a prescribed or directed course of treatment that can improve the impairment to the extent that the person will not be disabled and thus restore the ability to work. Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007). This reasoning is appropriate where the symptom or phenomenon is such that a person's normal reaction to it is to seek relief, and where modern medicine is often successful in providing relief. One such example is a failure to seek relief from disabling pain because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief. Orn, 495 F.3d at 638.

Here, Dr. Olivera's notes documented the improvement in Plaintiff's back pain that Plaintiff experienced with the Flexeril prescribed by Dr. Olivera. (A.R. 162.) Further, the ALJ noted that although Plaintiff testified that he had chronic back pain, he admitted that he had undergone no back surgery, and his only treatment was a shot. (A.R. 29.) The record supports a conclusion that although Plaintiff's pain was no longer responding to Motrin, it was nevertheless subject to treatment with other medication that at the least could have significantly improved Plaintiff's symptoms. However, there is no indication that, aside from a single injection, Plaintiff was ever treated other than with oral medication or even with medication appropriate for severe pain. The Court concludes that the ALJ's reliance on Plaintiff's conservative treatment was clear and convincing in the circumstances of this case.

Further, the ALJ's references to Dr. Olivera's note, Plaintiff's desire for disability benefits, and Plaintiff's failure to seek or receive significant subsequent treatment are reasonably understood as reflecting a basic credibility finding. This reflected the incsistency between mild findings noted by Dr. Olivera upon examining Plaintiff and the apparent efficacy of conservative treatment and Plaintiff's subjective complaints. Included in the factors that an ALJ may consider in weighing a claimant's credibility are the claimant's reputation for truthfulness; inconsistencies

either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). Further, although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

Here, the Court finds clear and convincing the ALJ's reliance on the inconsistencies presented by Plaintiff. The ALJ concluded that Plaintiff was more focused on disability than the relatively mild objective signs warranted and who continued to assert a subjective inability to work despite improvement in symptoms. Because the ALJ stated the foregoing clear and convincing reasons, the ALJ could appropriately rely on the minimal findings reflected in the objective medical evidence concerning Plaintiff's back pain. The ALJ referred to the mild findings and the treating doctor's doubt as to any disabling seriousness (A.R. 28) as well as to the consulting examiner's findings and opinion of mild osteoarthritis with mild radiculopathy (A.R. 29). As the detailed summary of the medical evidence reflects, this reasoning was supported by substantial evidence in the record and is clear and convincing in force considering all the circumstances of the present case.

Accordingly, the Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

VII. Disposition

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Michael Robles.

IT IS SO ORDERED.

Dated: **February 9, 2010**            **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE